JUNE 8, 1875. } SCHOOL DISTRICT No. 6 IN ANDOVER *v.* CARR.

*Waiver of notice—Incompatibility of offices—Dismemberment of school districts.*

When parties entitled to notice of a meeting of the selectmen and school committee to act upon a petition for a change in the lines of adjoining districts appear before them, and make no objection at the time to the sufficiency of the notice, such appearance is a waiver of all right to notice, and of all exception to the regularity of issuing the same.

The offices of selectman and school committee are not incompatible, but may be held at the same time by the same person.

The validity of the action of the selectmen and school committee in changing the lines of adjoining school districts, constituting new districts, or uniting the whole or part of any district to an adjoining district, does not depend upon the correct apportionment of the debts and property of the districts so affected. Such apportionment may be made at the same time, or it may be effected by an independent proceeding.

TRESPASS *quare clausum fregit*, for entering the plaintiffs' close in said Andover, December, 1872, and tearing down and destroying a school-house belonging to the district. There was also a count of trespass *de bonis* for tearing down, and carrying away, and converting to their own use said house.

The following facts were agreed to for the purpose of determining the questions of law arising thereon, without prejudice to either party

if they should hereafter wish to go to trial upon any fact in the case, whether herein stated or not. The close was never owned by said school district, but by individuals in said district, and said school-house was erected thereon by their license and permission, and was the personal property of said school district No. 6. School district No. 6 in Andover had been organized and exercised the privileges of a district for more than five years prior to December, 1872, and has kept up an organization since that time. In the year commencing March, 1872, the selectmen of Andover consisted of George J. Swett, Elbridge G. Emery, and Sidney M. Cilley, and the school committee of Andover for the same year consisted of said Emery. On September 30, 1872, application by a petition was made to the school committee and selectmen of the town of Andover to change the lines of school districts Nos. 6, 4, 7, and 8, so that among other things a portion of district No. 6, specifically described, should be set off on to No. 4 and become a part thereof; another portion thereof, specifically described, set off on to No. 7, and still another portion set off on to No. 8. The petition also asked the committee and selectmen to make an equitable apportionment of the property and debts of said districts, and to find the balance, if any, equitably due from either of said districts to the other, and order the payment thereof within a time to be limited by them. George J. Swett, one of the selectmen, was disqualified to serve on said application; and on October 7, 1872, said Swett, Emery, and Cilley, as selectmen, appointed one John F. Emery, of said Andover, living in another district from those named, to act in the place of said Swett; and on October 12, 1872, said John F. Emery was duly sworn, and a record thereof made. A notice of the time and place of hearing on said petition was issued October 8, 1872, to take place October 26, 1872, signed by said Elbridge G. Emery as school committee, and said Swett, Elbridge G. Emery, and Cilley as selectmen. A hearing was had after due notice and service thereof at the time and place appointed, and a report, signed by said Elbridge G. Emery, school committee, and John F. Emery, Elbridge G. Emery, and said Cilley, selectmen of Andover, was made October 26, 1872, and duly recorded. In this report they say,—" Upon the foregoing petition we appointed a hearing," &c., " at the school-house in school district No. 6," &c., " and having heard all parties " &c., " we " "annex so much of school district No. 6 to school district No. 4 as the prayer of said petition sets forth ; and so much of school district No. 6 as the prayer of this petition sets forth to school district No. 7 ;" and in the same manner to No. 8. This comprised all the territory of district No. 6. " We also make an equitable apportionment of the property of said school district No. 6 (there being no debts outstanding against the said district No. 6) :" " The school-house and fixtures and apparatus appertaining to the same, heretofore belonging to the said school district No. 6, shall be the property of said school district No. 4 ; and said school district No. 4 shall pay to said school district No. 7 the sum of eight dollars within ninety days, and to said school district No. 8 the sum of seven dollars within ninety days from

the date of this day, October 26, 1872, which sums we find equitably due from said district No. 4 to the said districts Nos. 7 and 8 : each of said districts shall collect and retain to its own use all debts now due to the same." No other computation of the debts of said district No. 6, nor any other appraisal of its property, was ever made, nor was there any attempt by the school committee or selectmen of said town at finding any equitable balances due from or to any part of said district No. 6, except as aforesaid.

The defendants claim that a valid vote of school district No. 4 was passed December 3, 1872, after the report of the school committee and selectmen aforesaid had been made and recorded, authorizing the sale of the house, fixtures, and apparatus in district No. 6 ; and that such sale was had, and one of the defendants became the purchaser, and he with the other defendants removed the house, &c., as they had the right to do, in October or November, 1873, doing no unnecessary damage. The plaintiff, for the purpose of this case, admits that said school districts Nos. 4, 7, and 8 had for many years had a lawful existence, the validity of these proceedings as claimed by the defendants, and that the removal of the aforesaid house, fixtures, and apparatus is the trespass mentioned in the writ.

If the action can be maintained, an auditor or referee may be appointed by the court to assess damages unless either party elects a trial by jury.

The count *de bonis asportatis* was not in the original writ, but at the return term it was allowed *pro forma* as an amendment, subject to the defendants' exception ; and the question whether such an amendment could be properly allowed is transferred upon that exception as a part of this case. Either party in argument may refer to the records referred to in the foregoing case.

The questions of law arising on the foregoing case were transferred from the circuit court to this court for determination, by FOSTER, C. J., C. C.

*Barnard*, for the plaintiffs, cited Gen. Stats., ch. 233, secs. 3 and 4, ch. 1, sec. 14, Laws of 1868, ch. 1, sec. 25, *Crowell* v. *Davis*, 12 Met. 293, *Petition of Gilford*, 25 N. H. 124, and *Ela* v. *McConihe*, 35 N. H. 279.

*Shirley*, for the defendants, cited *Ashuelot R. R. Co.* v. *Elliot*, August term, 1874, *Sanders* v. *Grafton*, January term, 1872, *School District* v. *Tapley*, 1 Allen 49, Act of 1868, ch. 1, secs. 24–26.

SMITH, J. 1. If there was any defect in the notice, it was waived. The record, which is made a part of the case, recites that school district No. 6 appeared by its prudential committee and clerk. It also recites that several of its voters were present, and that they were heard. It does not appear that any objection was taken to any insufficiency in the notice that was given. The plaintiffs could, if they chose, have insisted

upon such notice being given as the law prescribes—probably such as is provided in ch. 233, Gen. Stats.; but want of notice, or an insufficient notice, is cured by an appearance by the party entitled to it, no objection on that account being seasonably taken. This principle is too familiar to be questioned. *Petition of Gilford*, 25 N. H. 124; *Goodwin* v. *Milton*, *ib.* 458. The objection that the notice was insufficient (and whether it was insufficient it is not necessary to inquire) must be overruled.

2. It is possible that there might be such a state of things that it would be inconsistent in one holding the office of selectman to discharge at the same time the duties of school committee; but ordinarily this would not be so, and I do not think the two offices were incompatible in this case. By the constitution of this state, articles 93–95, persons holding certain offices are prohibited from holding other offices; but the office of selectman is not included in those provisions. No statute prohibits the same person from holding both offices at the same time. No sufficient reason has been suggested, and none occurs to me, why the two offices may not be held by the same person. Ordinarily there is no conflict in the respective duties belonging to these two offices. If, however, there is any doubt in this case, it is open to the inquiry whether the exception should not have been taken at the hearing, and must not now be regarded as waived; and it is quite probable that the action of Cilley and John F. Emery, constituting a majority of the selectmen, was sufficient—Gen. Stats., ch. 1, sec. 14—in case E. G. Emery is to be considered as disqualified by reason of his acting at the same time in the office of school committee.

3. The validity of the action of this tribunal, in annexing the territory of district No. 6 to the other three districts, does not depend upon the apportionment of the debts and property. If there be any defect in the apportionment that was made, it can be remedied upon proper proceedings. The statute does not require that severing territory from or annexing territory to any district should be done upon the same petition, or at the same time and place, as the apportionment of the debts and assets of the districts affected by such action is made. By Gen. Stats., ch. 78, sec. 9, the school committee and selectmen, upon petition, "may change the lines of adjoining districts, and may constitute new districts, or unite the whole or part of any district to an adjoining district." It will be noticed that this is required to be done *upon petition.* By the act of 1868, ch. 1, sec. 25, "the school committee" "and selectmen, by whom any district or districts in the same or in adjoining towns are divided or united, or the limits thereof in any way changed, shall make an equitable apportionment of the property and debts of the districts affected by such change, and find the balance, if any, equitably due from either of said districts to any of said districts, and order the payment of such balance within a time to be by them limited." This section took the place of sec. 10, ch. 78, Gen. Stats., which required such apportionment to be made by "the school committee, upon petition."

The statute as amended does not require the apportionment to be made " upon petition ;" and it is quite probable that the selectmen and school committee might proceed, without a petition therefor, under sec. 25 of ch. 1 of the act of 1868, to make such apportionment at the same time the boundaries of any district are changed by them upon petition under ch. 78, sec. 9, of Gen. Stats. But however that may be, I find nothing in the statutes that makes the validity of their action in changing such boundaries depend upon a simultaneous apportionment of the property and debts of such districts.

4. The amendment, adding a new count *de bonis asportatis*, was properly received. It clearly comes within the liberal provisions of our statutes in regard to amendments. The form of the action is not changed, nor is the identity of the cause of action destroyed. *Hurd* v. *Chesley, ante,* 21.

LADD, J. It seems quite clear that any supposed insufficiency in the notice for the hearing of October 26, 1872, must be regarded as cured by the appearance of the plaintiffs.

I am not aware of any legal obstacle to prevent the same individual from holding and exercising at the same time the two offices of selectman and school committee.

I do not think the validity of the judgment, dismembering, and, in effect, annihilating district No. 6, depends upon whether the tribunal rendering it did or did not, at the same time, complete their duty in the premises by making an equitable apportionment of the property and debts. The division is the principal thing, and the apportionment an incident. The two acts are independent, though having relation to the same subject-matter; and if the committee and selectmen, after making the division, neglect or refuse to make an apportionment, or fail to comply with the requirement of the law in that regard, ample remedies are at hand whereby the rights of all persons interested may be secured. I am of opinion that, by the report of the school committee and selectmen, district No. 6 ceased to exist, except for the purposes mentioned in Gen. Stats., ch. 78, sec. 24.

CUSHING, C. J., concurred.

*Case discharged.*